IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| **WILLIAM JEFFERY CARLISLE,** Institutional I.D. #1858475, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 6:13-CV-005-BL |
| **JOHN DUNN, MD,** | § § § § | |
| Defendant. | § | Assigned to U.S. Magistrate Judge |

### REPORT AND RECOMMENDATION

Plaintiff William Jeffery Carlisle, an inmate currently housed by the Texas Department of Criminal Justice in the Polunsky Unit, filed his original complaint on February 4, 2013. (Docs. 1, 5). Proceeding *pro se* and *in forma pauperis*, Carlisle alleged that "Clifford Dunn" violated his constitutional rights giving rise to suit via 42 U.S.C. § 1983.

Pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), this court held an evidentiary hearing at which Carlisle testified. (Docs. 39, 41). Subsequently, the court determined that Carlisle had stated claims sufficient to require a response from the named Clifford Dunn. (Doc. 42). When a summons to Clifford Dunn, (Doc. 48), was returned undeliverable, it was discovered that Clifford Dunn had been improperly named as a defendant instead of John Dunn, M.D., (hereafter "Dr. Dunn" or "defendant"), physician for the Brown County Jail. Carlisle filed a motion to properly name Dr. Dunn in which Carlisle also seemed to add unspecified defendants. (Doc. 51). The court ordered Carlisle to, if he indeed wished to add defendants, file an amended complaint setting forth the name, contact information, and brief

description of the acts or omissions of each person to be added as a defendant. (Doc. 53). Carlisle filed his amended complaint, adding Sean McFarland and Becky Caffey, employees at the Brown County Jail, as defendants. (Doc. 54). After considering the amended complaint and Carlisle's testimony at the *Spears* hearing, the court dismissed McFarland and Caffey and ordered the issuance of summons on Dr. Dunn. (Doc. 56). A scheduling order was set and discovery was completed. (Doc. 65). Now before the court is Dr. Dunn's motion for judgment on the pleadings, or in the alternative summary judgment. (Doc. 75).

After considering all the filings, including testimony from the evidentiary hearing, this court concludes that Carlisle's claims cannot survive summary judgment.

## I. BACKGROUND

Carlisle first entered the Brown County Jail in November of 2012. (Doc. 1, p. 5). At that time, he alleged he had a history of seizures and had been prescribed seizure medication. (Doc. 76-1, p. 3). During his stay at the Brown County Jail, according to jail officials, Carlisle established a pattern of faking seizures. (*Id.* at 32–40).[1] Nonetheless, when Dr. Dunn first saw Carlisle in November of 2012, Dr. Dunn continued Carlisle's previously prescribed seizure medication because, if taken as prescribed, it would have no ill effect on Carlisle. (*Id.* at 3). Additionally, Dr. Dunn referred Carlisle to a local internist, Dr. Butka, who agreed with Dr. Dunn's assessment that there were no medical indications warranting a change in treatment and that continuing seizure medications was proper on the possibility that Carlisle might have an actual medical issue. (*Id.*).

On December 27, 2012, Carlisle was found hiding a razor in his Bible, so his cell was searched for further contraband. (*Id.* at 25). Corrections officers found a stash of pills in

---

[1] Plaintiff denies that he fakes seizures and asserts he has a "serious seizure disorder." (Doc. 80-6, p. 1).

Carlisle's cell, including the seizure medication prescribed by Dr. Dunn. (*Id.*).[2] Hoarding seizure medication poses different risks than taking one unneeded seizure pill; for example, an overdose of such can be fatal, and an inmate with stores of medication is a trafficking risk to other inmates for whom even one pill might have drastic adverse effects. (*Id.* at 3). Therefore, Dr. Dunn withdrew the prescription for the seizure medication Carlisle was apparently not taking. (*Id.*).[3] Dr. Dunn believed that Carlisle had suffered no actual recent seizures so the seizure medication was unnecessary. (*Id.*). Carlisle believed the seizure medication was necessary, and deprivation thereof was a "denial of adequate medical treatment for serious medical conditions." (Doc. 54).

## II. ANALYSIS

Dr. Dunn filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure (Rule) 12(c), or in the alternative, a Rule 56 motion for summary judgment. (Doc. 76). The court's discussion proceeds in that order.

### A. Qualified Immunity

As a preliminary matter, Carlisle does not indicate whether he is suing Dr. Dunn in his individual or official capacity or both. The court, considering Carlisle's *pro se* status, construes Carlisle's complaint as bringing suit against Dr. Dunn in both capacities. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972).

"Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

[2] Plaintiff does not contest that seizure pills were found in his cell, nor that the seizure pills were his, but denies he was "hoarding other meds," instead asserting that "most of the other meds were other inmates medication it was a common stashing place for meds to [be] placed." (Doc. 80-6, p. 4).
[3] Carlisle contends he took his seizure medication in the morning even though it was dispensed in the evening because it affected his ability to sleep. He never explained, however, why he would have more than one pill from the previous day, much less the three seizure pills as discovered in the December 27 search. (Doc. 76-1, p. 25).

known.'" *Flores v. City of Palacios*, 381 F.3d 391, 393–94 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The court conducts a two part inquiry, established by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001): "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right[, and] [s]econd if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier*, 533 U.S. at 194).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While a case on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

"When, as here, the defendant[] [has] asserted qualified immunity in a summary judgment motion, 'the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law.'" *Morgan v. Texas Dept. of Criminal Justice*, 537 F.App'x 502, 508 (5th Cir. 2013) (unpublished) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

However, even if a plaintiff establishes that a government official violated a clearly established right, the official is still entitled to qualified immunity if his conduct was objectively reasonable. *Gates v. Texas Dep't of Protective & Reg. Serv.*, 537 F.3d 404, 419 (5th Cir. 2008). An official's conduct is "objectively reasonable unless all reasonable officials in the defendant's

circumstances would have then known that the conduct violated the constitution." *Id.* (citing *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).

Here, even giving Carlisle the widest possible latitude by assuming, *arguendo*, that he has established a violation of a clearly established right, his claim fails because he does not show that Dr. Dunn's actions were not objectively reasonable. *See Gates*, 537 F.3d at 419. Discontinuing a prisoner's medication when the prisoner is hoarding it is both common and a matter of medical discretion. *See, e.g., Farmer v. Brennan*, 511 U.S. 825 (1994); *Terry v. Blackerby*, 2013 WL 6501246, 2013 U.S. Dist. LEXIS 175626 (N.D. Tex. 2013) (prison physician discontinued prisoner's medication when prisoner was discovered to be hoarding medication). Accordingly, Carlisle cannot overcome Dr. Dunn's assertion of qualified immunity and the suit is therefore construed as against Dr. Dunn in his official capacity. *See Corley v. Prator*, 290 F.App'x 749, 752 (5th Cir. 2008) (unpublished) (citing *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000)).[4]

### B. Rule 12(c) or Rule 56

#### 1. Judgment on the Pleadings

"A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–14 (5th Cir. 2002); *Voest-Alpine Trading USA Corp., v. Bank of China*,

---

[4] The suit is therefore treated as against the municipality, Brown County. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

142 F.3d 887, 891 (5th Cir. 1998) ("Judgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that remain.").

A particular issue arises in this case—what in fact are the pleadings? Carlisle filed seven "Additional Attachments" or "Supplemental Documents" after filing his amended complaint. Most of these filings are free-form, hand-written documents, many of which assert facts and claims outside the original and amended complaints. (*See* Docs. 17, 21, 23, 36, 52, 63, 66, 73, 77, 78, 79, 80). Many of the filings include irrelevant grievance or medical records with no explanation as to applicability. The filings, with exception of Doc. 80-6, are unsworn.

For example, after he filed his Amended Complaint, (Doc. 54), Carlisle filed "Additional Attachments" to his complaint, consisting of an unsworn, handwritten note and forty pages of unsworn inmate grievance forms. (Doc. 63). The court today does not decide whether this and other filings constitute Carlisle's pleadings for 12(c) purposes; in part because the court decides the case on summary judgment, and in part because, "as stated in [Rule] 12(c), where a district court grants a motion styled as a motion to dismiss but bases its ruling on facts developed outside the pleadings, we review the order as an order granting summary judgment." *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996).[5]

## 2. Summary Judgment

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337 (5th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). A court "consider[s] all of the evidence in the record but refrain[s] from

---

[5] *See generally Stewart v. Guzman*, 555 F.App'x 425, 431–32 (5th Cir. 2014) (unpublished) (discussing whether and when unsworn affidavits are competent summary judgment evidence); *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 382 n.2 (5th Cir. 2013).

making credibility determinations." *Id.* at 343. Instead, the court "draw[s] all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation marks omitted). "Summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby*, 477 U.S. at 247–48 (emphasis in original).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* "[T]he nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor*, 476 F.3d at 343 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994))).

## C. Eighth Amendment

The Eighth Amendment prohibition against cruel and unusual punishment forbids prison officials from acting with deliberate indifference to the serious medical needs of prisoners. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

"In order to establish an Eighth Amendment claim for deliberate indifference to medical needs, a prisoner must show that prison officials knew of and disregarded an excessive risk to inmate health or safety; 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Miles v. Rich*, 576 F.App'x 394, 395 (5th Cir. 2014) (unpublished) (quoting *Farmer*, 511 U.S. at 837). "Deliberate indifference is an extremely high standard to meet." *Horn v. Vaughan,* 469 F. App'x 360, 363 (5th Cir. 2012) (per curiam) (unpublished) (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citation and internal quotation marks omitted)).

An allegation "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) (citing *Estelle*, 429 U.S. at 105). "Nor does mere negligence, neglect or medical malpractice." *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991) (citing *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979)) (internal quotations marks omitted); *Miles*, 576 F.App'x at 396 (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("It is not enough to show mere negligence, medical malpractice, or a disagreement with one's medical treatment.")); *Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir. 1999) (While inadequate treatment "may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."). Even gross negligence does not constitute deliberate

indifference. *Lewis v. Evans,* 440 F.App'x 263, 265 (5th Cir. 2011) (unpublished) (citing *Hernandez v. Tex. Dep't of Prof. & Rev. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004)).

### III. APPLICATION

Here, considering all the evidence in light most favorable to Carlisle, summary judgment is appropriate. Carlisle has not raised a genuine issue of material fact and Dr. Dunn is entitled to judgment in his favor.

Carlisle fails to show that Dr. Dunn was aware of and disregarded an excessive health risk. Dr. Dunn attached several exhibits to his motion for summary judgment, including sworn affidavits and medical and disciplinary records. (Doc. 76-1). These exhibits and other evidence on the record establish that Dr. Dunn saw Carlisle in the first month of Carlisle's detention, and continued Carlisle's previously prescribed seizure medication. (Docs. 66, p. 3; 76-1, pp. 3, 10–11). Dr. Dunn noted that even with Carlisle's documented history of faking seizures, (Doc. 76-1, pp. 32–40), the seizure medication would not harm Carlisle if taken as prescribed. (Doc. 76-1, p. 3). Dr. Dunn sought a second professional opinion, which affirmed his own. (*Id.*). When Carlisle was discovered hoarding his medication, however, Dr. Dunn perceived a serious health risk, both to Carlisle and to other inmates. (*Id.*). An overdose of the seizure medication Dr. Dunn prescribed to Carlisle could have been fatal to Carlisle. (*Id.*). Additionally, an inmate who is hoarding medication becomes a trafficking risk to other inmates, for whom even one dose of unprescribed medication could be fatal. (*Id.*).

Carlisle does not adequately contest that: Dr. Dunn prescribed him medication when they met in Carlisle's first month of incarceration; a stash of seizure pills was found in his cell[6]; hoarding such medication presents a significant health risk to him and other inmates; Dr. Dunn's choice in withdrawing the seizure medication was a sound medical decision, *see Gates*, 537 F.3d

---

[6] To the contrary, Carlisle admits "that the Dilantin medication that was found was [his]" (Doc. 80-6, p. 4).

at 419; and after the withdrawal of the seizure medication, Dr. Dunn continued to observe Carlisle's condition and would have put Carlisle back on the seizure medication if Carlisle displayed seizure symptoms. (Doc. 76-1, p. 3).

Carlisle's only sworn response to Dr. Dunn's motion for summary judgment fails to raise a genuine issue of material fact sufficient to survive summary judgment. (Doc. 80-6). Therein, Carlisle states that he has a serious seizure condition, that he does not fake seizures, rather than "hoarding" his seizure pills, he was holding them to take later in the day, and that other medications belonged to other inmates. (*Id.*). Additionally, Carlisle alleges Dr. Dunn was negligent, which will not support a claim under § 1983. *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990).

Carlisle's sworn declaration does not show Dr. Dunn was aware of and disregarded a substantial risk to Carlisle's health or safety, thereby violating his constitutional rights. Carlisle has failed to set forth specific facts showing there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 256. Carlisle instead submitted evidence that is largely either irrelevant, (*see, e.g.*, Doc. 79, p. 17), or consists of "conclusory allegations" and "unsubstantiated assertions." (*see, e.g., id.* at 21–25); *Hathaway*, 507 F.3d at 319 (quoting *Turner v. Baylor*, 476 F.3d at 343 (quoting *Little*, 37 F.3d at 1075)). Considering the entire record, the court concludes that a reasonable jury could not return a verdict for the nonmovant.

In sum, Dr. Dunn met Carlisle's allegations with summary judgment evidence refuting Carlisle's claims, and Carlisle rested on his allegations. *See Smallwood v. Dir. of Healthcare Servs. Tex. Dep't of Criminal Justice, Institutional Div.*, 220 F.3d 585 (5th Cir. 2000). Therefore, Carlisle cannot survive summary judgment. *Id.*

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Dr. Dunn's Motion for Summary Judgment be **GRANTED**.

**IT IS ORDERED** that all motions not previously ruled upon are **DENIED**.

**IT IS FURTHER ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated this 25th day of November, 2014.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE